1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK & COVENEY LLP
   4180 La Jolla Village Drive, Suite 530
4  La Jolla, California 92037-1474
   Tel: 858-623-4200
5  Fax: 858-623-4299

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  IZABELLE J. DOUCET and            CASE NO. 17-CV-0823-LAB-KSC
    CHARLOTTE DUKICH, individually
12  and on behalf of all others similarly   CLASS ACTION
    situated,
13                                     FIRST AMENDED CLASS ACTION
             Plaintiffs,              COMPLAINT FOR:
14
    vs.                              (1) VIOLATION OF THE
15                                   CALIFORNIA AUTOMATIC
    INTERNATIONAL HAIR               RENEWAL LAW
16  INSTITUTE, LLC, a Virginia limited   [Bus. & Prof. Code § 17600 *et seq.*]
    liability company; KERANIQUE, LLC,
17  a Virginia limited liability company;   (2) FALSE ADVERTISING
    ATLANTIC COAST MEDIA GROUP,       [Bus. & Prof. Code § 17500 *et seq.*]
18  LLC, a Virginia limited liability
    company; and DOES 2-50, inclusive,   (3) VIOLATION OF THE
19                                   CALIFORNIA CONSUMERS
             Defendants.             LEGAL REMEDIES ACT
20                                   [Cal. Civ. Code § 1750 *et seq.*]

21                                   (4) UNFAIR COMPETITION
                                     [Bus. & Prof. Code § 17200 *et seq.*]
22
                                     DEMAND FOR JURY TRIAL
23

24

25

26

27

28

**PRELIMINARY ALLEGATIONS**

1.     Defendants advertise and market haircare and skincare products via the Internet, television, telephone, email, and other channels using deceptive "risk-free" trial offers with hidden costs and hidden continuous service provisions.

2.     Specifically, when consumers respond to one of Defendants' "risk-free" trial offers, Defendants require the consumer to provide his or her credit card or debit card billing information, purportedly to pay nominal shipping and handling fees (typically less than $5.00) to receive the advertised product. However, 30 days after the consumer receives the product, Defendants charge the consumer the full price of the "trial" product, imposing charges that often amount to $159.90 or more onto the consumer's credit or debit card. Moreover, when a consumer accepts a "risk-free" trial offer, Defendants enroll the consumer in a negative option "auto shipment" plan, in which Defendants periodically ship additional products and charge the consumer's credit or debit card the full cost of the products, often $79.95 per month or more. To make matters worse, after consumers discover credit or debit card charges they did not authorize, and/or when consumers receive shipments they did not request, Defendants resist consumers' requests to return product for a refund and/or cancel further shipments.

3.     "Risk-free" trial marketing schemes, like the one utilized by Defendants, have been described as a "scam" by the Federal Trade Commission ("FTC"). *See* https://www.consumer.ftc.gov/taxonomy/term/858 (last accessed May 22, 2017). The FTC has sought to educate consumers to be able to avoid such scams, but the agency continues to receive numerous consumer complaints, many of which involve personal care products similar to those promoted by Defendants. *See* (*Strings attached to some "risk-free" trial offers*, available at https://www.consumer.ftc.gov/blog/strings-attached-some-risk-free-trial-offers (last accessed May 22, 2017); *Risk free trials were bait for rip offs*, available at

1  https://www.consumer.ftc.gov/blog/risk-free-trials-were-bait-rip-offs (last accessed
2  May 22, 2017).

3       4.     This action alleges that in the course of carrying out their "risk-free"
4  trial scheme, Defendants have violated, and continue to violate, the California
5  Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600 *et seq.*, the False
6  Advertising Law, Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal
7  Remedies Act, Cal. Civ. Code § 1750 *et seq.*, and the Unfair Competition Law, Bus.
8  & Prof. Code §17200 *et seq.*  This action seeks a public injunction and other
9  equitable relief, including an accounting, a declaratory judgment that Defendants'
10  conduct violated California law, and restitution, as well as compensatory and
11  punitive damages.

12                    **THE PARTIES**

13       5.     Plaintiff Izabelle J. Doucet ("Doucet") is an individual residing in San
14  Diego County, California.

15       6.     Plaintiff Charlotte Dukich ("Dukich") is an individual residing in San
16  Diego County, California.

17       7.     Plaintiffs are informed and believe and thereon allege that defendant
18  International Hair Institute, LLC ("IHI") is a Virginia limited liability company that
19  does business in San Diego County.  At times material to this Complaint, IHI has
20  advertised, marketed, distributed, or sold products at issue in this case to consumers
21  in California.

22       8.     Plaintiffs are informed and believe and thereon allege that defendant
23  Keranique, LLC ("Keranique") is a Virginia limited liability company that does
24  business in San Diego County.  At times material to this Complaint, Keranique has
25  advertised, marketed, distributed, or sold products at issue in this case to consumers
26  in California.

27       9.     Plaintiffs are informed and believe and thereon alleged that defendant
28  Atlantic Coast Media Group, LLC ("ACMG"), formerly identified as fictitious

3

defendant DOE 1, is a Virginia limited liability company that does business in San Diego County.  ACMG is the sole member of IHI and Keranique.  At times material to this Complaint, ACMG has advertised, marketed, distributed, or sold products at issue in this case to consumers in California, has organized, controlled, directed, and ratified the advertising, marketing, distribution, or sale of such products by IHI, Keranique, and/or other entities owned and operated by ACMG, and has organized, controlled, directed, and ratified the deceptive scheme alleged herein.

10.    Plaintiffs do not know the names of the defendants sued as DOES 2 through 50 but will amend this Complaint when that information becomes known. Plaintiffs allege on information and belief that each of the DOE defendants is affiliated with one or more of the named defendants in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the named defendants.  For ease of reference, Plaintiffs will refer to the named defendant and the DOE defendants collectively as "Defendants."

## JURISDICTION AND VENUE

11.    Defendants IHI and Keranique removed the action to this Court from the San Diego County Superior Court on April 24, 2017.  *See* Dkt. No. 1.

12.    Venue is proper because a substantial portion of the events giving rise to this action occurred in San Diego County and the liability arose in San Diego County.

## THE CALIFORNIA AUTOMATIC RENEWAL LAW

13.    In 2009, in response to the increasing number of consumer complaints about unwanted charges to credit cards for products or services that consumers did not explicitly request or know they were agreeing to, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Cal. Bus. & Prof. Code § 17600 *et seq*. (the California Automatic Renewal Law ("ARL")).  By enacting the ARL, the Legislature sought to protect consumers from becoming

4

enrolled without their consent in "automatic renewal" or "continuous service" subscriptions or programs.

14.    The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Cal. Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.  For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).  In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable."  *Ibid*.

(2) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

(3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of

1    being retained by the consumer.  If the offer includes a free trial, the

2    business shall also disclose in the acknowledgment how to cancel and

3    allow the consumer to cancel before the consumer pays for the goods or

4    services.

5    **DEFENDANTS' "RISK-FREE TRIAL" MARKETING SCHEME**

6    15.    The deceptive marketing scheme at issue in this case is illustrated in

7    website screenshots that Keranique has filed in the Court record.

8    16.    Attached hereto as Exhibit 1 is a true and correct copy of the first page

9    of what Keranique has described as the "Landing Page" of one its websites,

10    getkeranique.com.  *See* Dkt. No. 8-2 at Page ID 176-178.  This webpage displays

11    several prominent banners or bars promoting a "risk-free" trial offer, including "Get

12    Your Exclusive Rick-Free Trial!," "TELL US WHERE TO SEND YOUR

13    RISK-FREE TRIAL!," and "RUSH MY TRIAL!"  On the right side of the

14    webpage is an area for the consumer to fill in name and contact information.  After a

15    consumer has submitted name and contact information and clicked on the "RUSH

16    MY TRIAL" button, the consumer is directed to the "Cart Page."

17    17.    Attached hereto as Exhibit 2 is a true and correct copy of what

18    Keranique has described as the "Cart Page" of the getkeranique.com website.  *See*

19    Dkt. No. 8-3 at Page ID 180.  This page also contains several prominent references

20    to a "risk-free" trial, including a large colored banner "Get Your RISK-FREE

21    TRIAL NOW! >>," which points to the box for entry of credit card or debit card

22    information, and another colored banner below the area for payment card

23    information, "YES, Rush My Trial!"  In the middle of the page, the consumer is

24    shown the "Shipping and Processing" fee (in this instance, $3.95), the amount of

25    "Estimated Sales Tax" (in this instance, $0.00), and, in bold print, "Your total

26    today" (in this instance, $3.95).  The box for entry of credit or debit card

27    information is labeled, "SHIPPING PAYMENT" as the "FINAL STEP."

28

18.    In fact, Defendants' offer is not "risk-free."  Unless the consumer calls Defendants within 30 days after receipt to cancel the "trial," and unless the consumer returns the "trial" product (at the consumer's expense) within two weeks thereafter, Defendants charge the consumer's credit or debit card for the full price of the "trial" item (in the case of the Keranique Hair Regrowth Solution, $159.90). Moreover, upon submission of a "trial" order, Defendants enroll the consumer in Defendants' "auto shipment" program under which, without any further request or authorization of the consumer, Defendants make future shipments to the consumer on a recurring basis and make subsequent charges to the consumer's credit or debit card.

19.    Defendants attempt to justify those credit card charges and recurring shipments by relying on a paragraph in tiny print that appears under the large "Get Your RISK-FREE TRIAL NOW! >>" banner:

**Satisfaction Guarantee & Trial Offer Terms**
Please send me a 2 month supply of Keranique to try Risk-Free for 30 days.  I will be billed today just $3.95 shipping and processing.  With the 30 Day Satisfaction Guarantee, I just have to call within 30 days of receipt and return the System within 2 weeks to avoid being billed any additional amount.  If I keep the System, I will be billed two payments of $79.95, 30 days and 60 days following receipt of my shipment.  Then, unless I cancel first, I will continue to receive a new 60 day supply every 2 months with the same low price of just $79.95 per month for 2 months plus $7.95 per shipment, which will be billed to the card I provide today.  By submitting my order, I agree to the Terms of Use and authorize Keranique to charge my card for each shipment as described above.  Local and State sales tax may apply.  There is no commitment to continue.  I can call customer service at 1-888-237-4131 at any time to cancel.  My 30 Day Satisfaction Guarantee covers every shipment of Keranique.

20.    Many consumers are deceived by Defendants' "risk-free" trial scheme. Illustrative of consumer deception are hundreds of consumer complaints posted on a variety of websites, including pissedconsumer.com (https://keranique.pissedconsumer.com), the FTC's website, and many others.  For example, complaints on pissedconsumer.com include the following about consumers' experiences with Keranique:

**Keranique – Switch and Bait**.  Offered a gift via completing a CVS survey, all I need to do is pay the shipping cost. Not True, you will be billed the total cost of the product if you keep the product and cancel before the 30 day trial.  So the products are not free, your credit card will still be billed for a 60 day supply unless you cancel and return the unused product before the end of the trial period.  Of course, you are responsible for all shipping cost, and items sent separately will need to have a separate RMA number.  For example, shampoo, cannot be

returned with vitamin shipment. Lesson learned, do not accept any survey "free gifts," even if they say keep the product.

A true and correct printout of that complaint is attached as Exhibit 3.

**Keranique – Complaint about so=called free trial**. I applied for a free trial and received large bottles of the product, so I called the company and asked why I didn't get small sample bottles. It turns out that if I kept and tried the products that were sent to me, I would be charged $163 for it in 30 days and then every month afterward unless I cancelled. So I had already paid for shipping to get this so-called "free trial," and so when I found out about the scam, I asked for a return label so I could send it back without even opening or trying it. I was told I had to pay for return shipping as well. This a ridiculous and bogus offer because I was also told that it takes at least 4 months to. So even if you tried it out for 30 days, it would only trap you into being charged this exhorbitant (sic) fee for a product you have no way of knowing if it's effective. DON'T TAKE THE FREE TRIAL and save yourselves the hassle.!!

A true and correct printout of that complaint is attached as Exhibit 4.

**Free offer . . Keranique Survey Reward-Scam**. I received my survey reward Keranique Kit along with a bill for $179.00, I was only responsible for the shipping and handling but to my shock I received the product along with the bill and a notice that additional kits would be sent monthly at $79 ea . . I am so pissed..Keranique says I can return the kit and pay shipping again. [¶] I cancelled any further shipments because I don't appreciate being tricked. [¶] a FREE OFFER IN WHICH THE WINNER PAYS S&H ONLY SHOULD NOT BE BILLED FOR THE GIFT…..I AM POSSED..I am returning this kit but, from the reviews I've read regarding this company it sounds like me and my credit card company have a big fight on our hands. Please do not fall for this.

A true and correct printout of that complaint is attached as Exhibit 5.

**Keranique – DON'T DO IT GIRLS . . . Scam to get your money**. I responded to the TV ad for Keranique. I tried to cancel when I realized this was a forced purchase instead of the free offer they purported. The representative insisted the product was already sent out. I tried the product and it made my scalp itch. I went to their website to cancel the product. They did not sent the package to return to unused portion of the product. [¶] More than a month after I cancelled the product, (which customer service admits) they billed me for $84.75. They acknowledge that i cancelled but refuse my refund.

A true and correct printout of that complaint is attached as Exhibit 6.

**Keranique – BAD COMPANY!** I ORDERED WHAT I THOUGHT WAS A FREE TRAIL (sic) PACK OF KERANIQUE PRODUCTS WHEN I RECD THIS OFFER AFTER FILLING OUT AN ONLINE SURVEY. I WAS TO PAY JUST THE SHIPPING AND HANDLING CHARGE. [¶] BUT SOON AFTER I RECD THE PACKAGE, A BILL FOR $177 ARRIVED IN MY EMAIL BOX. LUCKILY I HAD NOT

8

1    YET OPENED THE PACKAGES SO I GAVE IT BACK TO MY
2    MAILMAN AS A RETURN-TO-SENDER BUT WHEN IT
     REACHED KERANIQUE, THEY SENT IT OUT AGAIN TO ME.
     IN THE MEANTIME I HAD COMMUNICATED WITH THEM
3    DETAILS OF MY TRANSACTION; THEY OFFERED ME 30% 40%
     AND FINALLY 50% OFF IF I KEPT THE STUFF.
4
     A true and correct printout of that complaint is attached as Exhibit 7.
5

6              **PLAINTIFFS' EXPERIENCES WITH KERANIQUE**

7        **Izabelle Douchet**

8        21.    In or about December 2016, Doucet received an email offering a "free
9    gift" if she filled out an online survey.  Doucet completed the online survey and
10   provided her credit card information to pay for only shipping and handling of the
11   "free gift."  Based on Defendants' explanation that Doucet's "risk-free" trial order
12   was submitted through getkeranique.com, Doucet is informed and believes and
13   thereon alleges that she was automatically directed to that website upon completing
14   the online survey.

15       22.    Approximately a month later, Doucet noticed a charge on her credit
16   card for $85.94 for Keranique Hair Growth product.  Doucet is informed and
17   believes and thereon alleges that the $85.94 credit card charge was made to
18   Doucet's credit card account by Defendants.

19       23.    In response to that charge, Doucet made a telephone call to a telephone
20   number operated by Defendants to inform them that she did not authorize the $85.94
21   charge on her credit card and that she wanted to return the product for a refund.  The
22   customer service agent refused to allow Doucet to do so.  Instead, the agent told
23   Doucet that she (Doucet) had agreed to subscribe to a "program" for Keranique
24   products that involves multiple future shipments.  Doucet insisted that Defendants
25   refund the charge that had been made, remove her (Doucet) from receiving future
26   products, and not make further charges to her credit card.  The customer service
27   agent refused those requests.

28

17-CV-0823-LAB-KSC

24. As a result of Defendants' refusal to refund charges associated with the (supposedly) "free gift" that Doucet had received and the refusal to halt future shipments to Doucet, Doucet had to cancel her credit card in order to avoid further unauthorized charges by Defendants. After Doucet cancelled her credit card, Doucet received a threatening letter from Defendants indicating that Defendants were attempting to charge Doucet's credit card, that the charge was not going through, and that Doucet needed to call Defendants to pay for the next shipment.

25. Defendants never obtained Doucet's consent to charge her the $85.94, or to enroll her in Defendants' auto shipment program. The email that Doucet received with the offer for the "free gift" did not disclose that upon providing credit card information to pay for shipping and handling of the "free gift," Defendants would charge Doucet for the full price of the product if she did not call or cancel or if she did not return the product within a limited period of time, nor did it disclose that Defendants would enroll Doucet in an auto shipment program that would result in future recurring shipments and recurring charges to Doucet's credit card.

26. Had Doucet been informed at the outset that Defendants intended to charge her for the product and/or enroll her in an auto shipment program, Doucet would not have provided her credit card information, would have declined to receive the product or to be enrolled in Defendants' auto shipment program, and would not have incurred any of the credit card charges posted by Defendants.

**Charlotte Dukich**

27. In or about August 2016, Dukich saw a television advertisement for Keranique Hair Growth product. Dukich called the telephone number displayed on the television advertisement, and was offered "free" product if Dukich would pay for only shipping and handling of the "free" product. Dukich provided her credit card information over the telephone to pay for only shipping and handling of the "free" product. Approximately a month later, Doucet received a notification that Defendants were going to charge Dukich $85.94 for her "next installment payment"

17-CV-0823-LAB-KSC

for the Keranique Hair Rejuvenation System to the "credit or debit card [Dukich] provided when placing [her] order."

28.    Dukich promptly filed an Incident Report advising Defendants to cancel her account and to not charge her credit card.  Nevertheless, Defendants continued to send Dukich threatening letters and emails advising Dukich that she had a "past due balance of $171.89 for the product [Dukich] had already received."

29.    Defendants never obtained Dukich's consent to enroll Dukich in Defendants' auto shipment program.  The customer service representative that Dukich spoke with regarding the "free gift" did not disclose that after Dukich provided credit card information to pay for shipping and handling of the "free gift," Defendants would charge her for the full cost of the product and/or enroll Dukich in an auto shipment program.

30.    Had Dukich been informed at the outset that Defendants intended to charge her for the product and/or enroll her in an auto shipment program, Dukich would not have provided her credit card information, would have declined to receive the product or to be enrolled in Defendants' auto shipment program, and would not have incurred any of the credit card charges posted by Defendants.

31.    Plaintiffs are informed and believe and thereon alleges that, in connection with advertisements, marketing materials, and/or offers directed to Plaintiffs and other California consumers, and with the use of information submitted by Plaintiffs and other California consumers in response to such advertisements, marketing materials, and/or offers, Defendants have charged the consumers' credit cards, debit cards, and/or third-party payment accounts without authorization under the guise that the consumers had agreed to pay full price for products that were advertised as "free," "risk-free," or "trial," and enrolled the consumers in memberships that provide for continuous service until cancelled by the consumer when, in fact, the advertisements, marketing materials, offers, and subsequent charges associated therewith were and are in violation of California law.

32.    On information and belief, Plaintiffs allege that during the limitations period at least the following products have been advertised, marketed, distributed, and sold by Defendants in the State of California pursuant to the scheme described above:  Keranique, Luminique, Hyroxatone, Celtrixa, Hydrolyze, and Declatone ("Defendants' Products").  Plaintiffs reserve the right to identify additional products that were marketed by Defendants through the "risk-free" trial scheme upon further investigation and discovery.

**CLASS ACTION ALLEGATIONS**

33.    Plaintiffs bring this lawsuit as a class action under Fed. R. Civ. Proc. 23.  Plaintiffs seek to represent the following Class: "All individuals in California who, within the statute of limitations period, were either (i) charged the full price for a Defendants' Product that was represented as a "free" trial, a "risk-free" trial, or at a discounted price, and for which Defendants charged a higher price if the product was not returned within a limited period of time, and/or (ii) enrolled in Defendants' auto shipment program."

34.    <u>Ascertainability</u>.  The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, Defendants' customer records, and Defendants' shipment and billing records.

35.    <u>Common Questions of Fact or Law</u>.  There are questions of fact or law that are common to the members of the class, which predominate over individual issues.    Common questions regarding the class include, without limitation: (1) Whether Defendants' advertisements and marketing practices are likely to mislead reasonable consumers; (2) Defendants' policies, practices and procedures for obtaining affirmative consent from customers before charging a credit card, debit card, or third-party payment account for an automatic renewal or continuous service; (3) whether Defendants presented the continuous service offer terms in a manner that is "clear and conspicuous" within the meaning of California law and in "visual

proximity" to the request for consent to the offer (or in the case of an offer conveyed by voice, in temporal proximity to the request for consent to the offer); (4) Defendants' policies, practices, and procedures for providing consumers with an acknowledgment that includes the continuous service offer terms, the cancellation policy, and information regarding how to cancel, in a manner that is capable of being retained by the consumer, and for allowing (or not allowing) consumers to cancel; (5) Defendants' record-keeping practices; and (6) the appropriate remedies for Defendants' conduct.

36. <u>Numerosity</u>. The Class is so numerous that joinder of all Class members would be impracticable. Plaintiffs are informed and believe and thereon allege that the Class consists of at least 100 members.

37. <u>Typicality and Adequacy</u>. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs allege on information and belief that Defendants make the same misleading advertisements and representations to other Class members, and that Defendants enrolled Class members in a continuous service program without presenting the applicable terms in the manner required by law, charged Class members' credit cards, debit cards, or third-party accounts without first obtaining the Class members' affirmative consent, and failed to provide the requisite acknowledgment in a manner capable of being retained by the Class members. Plaintiffs have no interests that are adverse to those of the other Class members. Plaintiffs will fairly and adequately protect the interests of the Class members.

38. <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of restitution to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their legal rights have been violated. Class certification

17-CV-0823-LAB-KSC

1  would also conserve judicial resources and avoid the possibility of inconsistent
2  judgments.

3      39.    <u>Risk of Inconsistent or Varying Adjudications</u>.  Prosecuting separate
4  actions by individual Class members would create a risk of inconsistent or varying
5  adjudications with respect to individual Class members that would establish
6  incompatible standards of conduct for Defendants.    As a practical matter,
7  adjudication with respect to individual Class members would be also dispositive of
8  the interests of other members not parties to the individual adjudications or would
9  substantially impair or impede their ability to protect their interests.

10      40.    <u>Conduct on Grounds that Apply Generally to the Class</u>.  Defendants
11  have acted or refused to act on grounds that apply generally to the Class, so that
12  final injunctive relief or corresponding declaratory relief is appropriate respecting
13  the Class as a whole.

## **FIRST CLAIM FOR RELIEF**

(Violation of the California Automatic Renewal Law)

16      41.    Plaintiffs incorporate the previous allegations as though fully set forth
17  herein.

18      42.    The California Automatic Renewal Law, Cal. Bus. & Prof. Code
19  § 17600 *et seq.*, became effective on December 1, 2010 as part of the California
20  False Advertising Law.

21      43.    Cal. Bus. & Prof. Code § 17601(a) defines the term "automatic
22  renewal" as meaning "a plan or arrangement in which a paid subscription or
23  purchasing agreement is automatically renewed at the end of a definite term for a
24  subsequent term."

25      44.    Cal. Bus. & Prof. Code § 17601(b) defines "automatic renewal offer
26  terms" as meaning "the following clear and conspicuous disclosures: (1) That the
27  subscription or purchasing agreement will continue until the consumer cancels.
28  (2) The description of the cancelation policy that applies to the offer. (3) The

17-CV-0823-LAB-KSC

recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (5) The minimum purchase obligation, if any."

45.    Cal. Bus. & Prof. Code § 17601(e) defines the term "continuous service" as meaning "a plan or arrangement in which a subscription or purchasing agreement continues until the customer cancels the service."

46.    Cal. Bus. & Prof. Code § 17601(c) defines the terms "clear and conspicuous" and "clearly and conspicuously'' to means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language.  In the case of an audio disclosure, 'clear and conspicuous' and 'clearly and conspicuously' means in a volume and cadence sufficient to be readily audible and understandable."

47.    Cal. Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1)    Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

(2)    Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

(3)   Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

48.   Cal. Bus. & Prof. Code § 17603 provides: "In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business."

49.   Plaintiffs are informed and believe and thereon allege that, during the applicable statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and Class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manner before the subscription or purchasing agreeing is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer; (b) charged the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms; and/or (c) failed to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in

16

1    a manner that is capable of being retained by the consumer, all in violation of Cal.

2    Bus. & Prof. Code § 17602.

3        50.    Unless enjoined and restrained by a court of law, Defendants will

4    continue to commit the violations alleged herein with respect to Plaintiff, Class

5    members, and other members of the general public of the State of California.

6        51.    Plaintiff seeks a public injunction (i) enjoining Defendants from

7    making offers to California consumers that do not comply with California law, from

8    making charges to credit cards, debit cards, or third-party accounts without prior

9    affirmative consent to an agreement containing "clear and conspicuous" disclosures

10    (as defined by the ARL) of the automatic renewal offer terms or continuous service

11    offer terms, and from failing to provide information regarding how to cancel in a

12    manner that is capable of being retained by the consumer; (ii) requiring Defendants

13    to provide an accounting of all monies obtained from California consumers pursuant

14    to automatic renewal or continuous service arrangements entered into in violation of

15    the ARL in the State of California during the applicable limitations period,

16    (iii) requiring Defendants to give individualized notice to all consumers who entered

17    into such contracts with Defendants in the State of California during the applicable

18    limitations period of those customers' rights under the ARL and applicable

19    California law (including their right to restitution of all monies paid to Defendants

20    and to keep any products that were sent to them without any obligation),

21    (iv) requiring Defendants to provide individualized notice to each such customer of

22    the procedures available for enforcing the customer's rights under the ARL, and

23    (v) establishing an effective monitoring mechanism to ensure Defendants' continued

24    compliance with the terms of the injunction.

25        52.    As a result of Defendants' conduct, pursuant to Cal. Bus. & Prof. Code

26    § 17603, Plaintiffs and Class members are entitled to restitution of all amounts that

27    Defendants charged to Plaintiffs' and Class members' credit cards, debit cards, or

28

17-CV-0823-LAB-KSC

1  third-party payment accounts during the four years preceding the filing of this

2  Complaint and continuing until Defendants' statutory violations cease.

3  **SECOND CLAIM FOR RELIEF**

4  (False Advertising)

5  53.    Plaintiffs incorporate the allegations of paragraphs 1-40 as though set

6  forth herein.

7  54.    California's False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*)

8  makes it "unlawful for any person to make or disseminate or cause to be made or

9  disseminated before the public in this state, … in any advertising device … or in any

10  other manner whatever, including over the Internet, any statement, concerning …

11  personal property or services, professional or otherwise, or performance or

12  disposition thereof, which is untrue or misleading and which is known, or which by

13  the exercise of reasonable care should be known, to be untrue or misleading.

14  55.    Throughout the Class Period, Defendants committed acts of false

15  advertising, as defined by the FAL, by using untrue or misleading statements to

16  promote the sale of Defendants' Products, including, without limitation, offering

17  products as "free" trials or "risk-free" trials when in fact Defendants intended to

18  charge the full price for the product if it was not returned by the consumer within a

19  limited period of time.

20  56.    Defendants knew or should have known, through the exercise of

21  reasonable care, that their advertisements, marketing statements, and representations

22  to consumers were untrue and misleading.

23  57.    Defendants' actions in violation of the FAL were false and misleading

24  such that the general public is and was likely to be deceived.

25  58.    As a direct and proximate result of these acts, consumers have been and

26  are being harmed.  Plaintiffs and Class members have suffered injury and actual out-

27  of-pocket losses as a result of Defendants' FAL violation.

28

17-CV-0823-LAB-KSC

1    59.    Unless enjoined and restrained by a court of law, Defendants will
2    continue to commit the violations alleged herein with respect to Plaintiff, Class
3    members, and other members of the general public of the State of California.

4    60.    Plaintiff seeks a public injunction (i) enjoining Defendants from
5    making offers to California consumers that violate the FAL; (ii) requiring
6    Defendants to provide an accounting of all monies obtained from California
7    consumers pursuant to or as a result of "free" trial or "risk-free" trial offers during
8    the applicable limitations period, (iii) requiring Defendants to give individualized
9    notice to all consumers who entered into "free" trial or "risk-free" trial arrangements
10   with Defendants in the State of California during the applicable limitations period of
11   those customers' rights under the FAL and applicable California law (including their
12   right to restitution of all monies paid to Defendants and to keep any products that
13   were sent to them without any obligation), (iv) requiring Defendants to provide
14   individualized notice to each such customer of the procedures available for
15   enforcing the customer's rights under the FAL, and (v) establishing an effective
16   monitoring mechanism to ensure Defendants' continued compliance with the terms
17   of the injunction.

18   61.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs and the Class
19   members are entitled to an order requiring Defendants to make restitution to
20   Plaintiffs and the Class members and enjoining Defendants from making offers to
21   California consumers that violate the FAL.

22                          **THIRD CLAIM FOR RELIEF**

23                (Violation of the Consumers Legal Remedies Act)

24   62.    Plaintiffs incorporate the preceding paragraphs as though fully set forth
25   herein.

26   63.    Plaintiffs and the Class members are "consumers" within the meaning
27   of Cal. Civil Code § 1761(d) in that Plaintiffs and the Class members sought or

28

17-CV-0823-LAB-KSC

acquired Defendants' goods and/or services for personal, family, or household purposes.

64.    Defendants' products and services are "goods" and "services" within the meaning of Cal. Civil Code § 1761(a) and (b).

65.    The purchases by Plaintiffs and Class members are "transactions" within the meaning of Cal. Civil Code § 1761(e).

66.    Defendants have violated Cal. Civil Code § 1770, subdivisions (a)(5), (a)(9), (a)(13), (a)(14), (a)(17), and (a)(19), by representing that Defendants' goods and/or services have certain characteristics that they do not have; advertising goods and/or services with the intent not to sell them as advertised; making false and misleading statements of fact concerning the reasons for, existence of, and/or amounts of price reductions; representing that a transaction involves rights or obligations which it does not have; representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction; and inserting an unconscionable provision into contracts.

67.    Defendants' conduct alleged herein was undertaken by Defendants with oppression, fraud, and/or malice, within the meaning of Cal. Civil Code § 3294(c).

68.    Unless enjoined and restrained by a court of law, Defendants will continue to commit the violations alleged herein with respect to Plaintiff, Class members, and other members of the general public of the State of California.

69.    Plaintiff seeks a public injunction (i) enjoining Defendants from committing future violations of the Consumers Legal Remedies Act in the State of California, (ii) requiring Defendants to provide an accounting of all monies obtained from California consumers in violation of the Consumers Legal Remedies Act in the State of California during the applicable limitations period, (iii) requiring Defendants to give individualized notice to all consumers with respect to whom a CLRA violation was committed by Defendants in the State of California during the

1    applicable limitations period of those customers' rights under the Consumers Legal

2    Remedies Act and other provisions of California law (including their right to

3    restitution of all monies paid to Defendants and to keep any products that were sent

4    to them without any obligation), (iv) requiring Defendants to provide individualized

5    notice to each such customer of the procedures available for enforcing the

6    customer's rights under the Consumers Legal Remedies Act, and (v) establishing an

7    effective monitoring mechanism to ensure Defendants' continued compliance with

8    the terms of the injunction.

9        70.    Plaintiffs, on behalf of themselves and all other members the Class,

10    seek an injunction prohibiting Defendants from continuing their unlawful practices

11    in violation of the Consumers Legal Remedies Act, as described above.

12        71.    Pursuant to Cal. Civil Code § 1780, Plaintiffs, on behalf of themselves

13    and all other members the Class, seek restitution of all money paid to Defendants,

14    punitive damages, and any other relief the Court deems proper.

15                    **FOURTH CLAIM FOR RELIEF**

16                    (California Unfair Competition Law)

17        72.    Plaintiffs incorporate the previous allegations as though fully set forth

18    herein.

19        73.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

20    Code § 17200 *et seq.*, defines unfair competition as including "any unlawful, unfair

21    or fraudulent business act or practice," or any "unfair, deceptive, untrue or

22    misleading advertising and any act prohibited by Chapter 1 (commencing with

23    Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

24        74.    In the course of conducting business, Defendants committed

25    "unlawful," "unfair," and/or "fraudulent" business practices, and engaged in "unfair,

26    deceptive, untrue or misleading advertising," by, inter alia, (a) failing to present the

27    terms of automatic renewal or continuous service provisions to consumers before a

28    purchasing agreement is fulfilled, and/or failing to present such terms to consumers

21

in a clear and conspicuous manner before a purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continuous service offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (c) failing to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (d) representing that a product was offered on a "free" trial or "risk-free" trial basis when, in fact, Defendants intended to charge full price for the item if the consumer did not call to cancel the trial and return the product to Defendants within a limited period of time; (e) representing that defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (f) advertising goods or services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); (g) making false and misleading statements of fact concerning the reasons for, existence of, and/or amounts of price reductions, in violation of Cal. Civil Code § 1770(a)(13); (h) representing that a transaction involves rights or obligations which it does not have, in violation of Cal. Civil Code § 1770(a)(14); (i) representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Cal. Civil Code § 1770(a)(17); (j) inserting an unconscionable provision into a contract, in violation of Cal. Civil Code § 1770(a)(19). Plaintiffs reserve the right to allege other violations of law that constitute unlawful or unfair business acts or practices.

75.    Defendants' acts and omissions as alleged herein are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

76.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

77.    Defendants' acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

78.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

79.    Unless enjoined and restrained by a court of law, Defendants will continue to commit the violations alleged herein with respect to Plaintiff, Class members, and other members of the general public of the State of California.

80.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff is entitled to (i) an order on behalf of the general public of the State of California enjoining Defendants from committing violations of the Automatic Renewal Law, the False Advertising Law, and the Consumers Legal Remedies Act; (ii) an order requiring Defendants to make full restitution to Plaintiff and Class members; (iii) an order requiring Defendants to provide an accounting of all monies obtained from California consumers pursuant to or in connection with "free" or "risk-free" trial offers and/or Defendants' auto shipment program during the applicable limitations period, (iv) requiring Defendants to give individualized notice to all California consumers who submitted such trial orders and/or were enrolled in Defendants' auto shipment program during the applicable limitations period of those customers' rights under the UCL and applicable California law (including their right to restitution of all monies paid to Defendants and to keep any products that were sent to them without any obligation), (v) requiring Defendants to provide individualized notice to

17-CV-0823-LAB-KSC

each such customer of the procedures available for enforcing the customer's rights under all applicable California laws; and (vi) establishing an effective monitoring mechanism to ensure Defendants' continued compliance with the terms of the injunction.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

On the First Cause of Action:

1.     For a public injunction on behalf of the People of the State of California as alleged herein;

2.     For a judicial declaration that Class members who were enrolled in Defendants' auto shipment program during the limitations period are entitled to retain any products shipped by Defendants, without any obligation on the part of the consumer, and an order directing Defendants to refund to Plaintiffs and Class members all amounts paid;

On the Second Cause of Action:

3.     For a public injunction on behalf of the People of the State of California as alleged herein;

4.     For restitution as alleged herein;

On the Third Cause of Action:

5.     For a public injunction on behalf of the People of the State of California as alleged herein;

6.     For restitution as alleged herein;

7.     For compensatory damages according to proof;

8.     For punitive damages pursuant to Cal. Civ. Code § 3294;

9.     For reasonable attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(e);

17-CV-0823-LAB-KSC

1    On All Causes of Action:

2    10.    For reasonable attorneys' fees pursuant to Cal. Code Civ. Proc.

3    § 1021.5;

4    11.    For costs of suit;

5    12.    For pre-judgment interest; and

6    13.    For such other relief that the Court deems just and proper.

7

8    Dated: May 22, 2017              DOSTART HANNINK & COVENEY LLP

9

10                                    /s/ Zach P. Dostart

11                                    ZACH P. DOSTART
                                      Attorneys for Plaintiff

12

13                        DEMAND FOR JURY TRIAL

14    Plaintiffs hereby demand trial by jury on all claims so triable.

15    Dated: May 22, 2017              DOSTART HANNINK & COVENEY LLP

16

17                                    /s/ Zach P. Dostart

18                                    ZACH P. DOSTART
                                      Attorneys for Plaintiffs

19

20    810644.3

21

22

23

24

25

26

27

28

17-CV-0823-LAB-KSC