UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IZABELLE J. DOUCET, et al., <br> Plaintiff, <br> v. <br> INTERNATIONAL HAIR INSTITUTE, LLC, et al., <br> Defendant. | Case No.: 17cv823-LAB (KSC) <br><br> **ORDER OF REMAND** |

Defendants removed this case from state court, citing diversity jurisdiction under the Class Action Fairness Act. After Plaintiffs amended their complaint, Defendants moved to dismiss or stay the action in favor of bilateral arbitration.

The briefing on this motion brought to the forefront some reasons to doubt whether the Court had jurisdiction over this case. In particular it appeared Izabelle Doucet and Charlotte Dukich, the two named Plaintiffs,[1] may lack standing. Where

---

[1] This order refers to Doucet and Dukich as the Plaintiffs. No class has been certified, so any class members are only putative plaintiffs at this point. And in any event, what matters for purpose of this order is whether Doucet and Dukich have standing, not whether someone else does.

no named plaintiff has standing, the Court cannot exercise jurisdiction over the case, and the defect cannot be cured by substitution of another plaintiff. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). The Court therefore issued an order (Docket no. 31 (the "OSC")) directing both parties to address jurisdiction. The parties have now filed their responses.

**Legal Standards**

The Court is obligated to confirm its jurisdiction, *sua sponte* if necessary, whenever doubts arise. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). In this case, as in every other case in federal court, jurisdiction is presumed to be lacking unless it is affirmatively shown. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). As the OSC pointed out, each party bears the burden of establishing jurisdiction, for different reasons.

Plaintiffs must show that the Court has jurisdiction over their claims. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). This includes a showing of standing as to each type of industry and form of relief they seek. *See Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 185 (2000). Because no class has been certified, Plaintiffs must establish standing on their own behalf; the standing of putative class members does not come into play. *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1986). And Defendants, as the removing parties, bear the burden of showing that removal was proper, which includes establishing jurisdiction. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

A lack of standing cannot be cured by substituting in new class representatives. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003). If the Court lacks jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c); *Polo v. Innoventions, Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

///

Article III standing contains three elements: an injury-in-fact, causal connection of the injury to the defendant's actions, and a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Although the standing inquiry is not the same as an inquiry into the merits, the two often overlap. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998); *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (holding that the question of jurisdiction and the merits of an action will be considered intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief). Where jurisdiction is intertwined with the merits, the Court assumes the truth of the allegations in a complaint unless controverted by undisputed facts in the record. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Standing, the Supreme Court has explained, is not commutative. *DaimlerChrysler Corp.*, 547 U.S. at 352. That is, a plaintiff's standing to bring one claim does not mean she has standing to bring all claims that arise from the same nucleus of operative fact. *Id.* Rather, standing must be shown as each claim, *id.*, and each type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). This means that injury-in-fact, causal connection, and redressability must be shown as to each claim and type of relief sought. The fact that plaintiffs might have been injured in ways not connected to their claims does not confer standing. Such injuries would not be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61. And injuries to supposed interests that are not legally-protected do not amount to an injury-in fact. *See id.*[2] This also means that standing can only be

---

[2] The inquiry into whether a complaint states a claim is not the same as whether the plaintiff has standing to pursue that claim. *See Warth*, 422 U.S. at 500; *Bell v. Hood*, 327 U.S. 678, 682 (1946). At the same time, the interest a plaintiff

based on claims a plaintiff is actually bringing, not on claims she hypothetically might have brought but didn't.

Although state courts may afford plaintiffs broad standing, in federal court standing is limited by Article III's requirements. *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012) ("State courts may afford litigants standing to appear where federal courts would not, but whether they do so has no bearing on the parties' Article III standing in federal court."); *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 999–1000, 1001–02 (9th Cir. 2001). This, together with the principle that standing must be established on the basis of a plaintiff's actual claims, means that while Article III standing can be narrower than the state law would permit, it cannot be broader.

Merely alleging that standing requirements are met does not establish standing. *Lujan*, 497 U.S. at 888 (refusing to find standing based on the "conclusory allegations of an affidavit"); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) (refusing to find standing based on conclusory allegations). Similarly, the mere fact that a plaintiff has asked for relief for an alleged injury does not necessarily mean she has standing to seek that relief. This is true for both injunctive and monetary relief. *See generally Lujan* (holding that plaintiffs lacked standing to seek the injunctive relief they were asking for). *See also Somers v. Apple, Inc.*, 729 F.3d 953, 962 (9th Cir. 2013) (indirect purchasers

---

points to as the basis for standing must be one that is protected by law. *McConnell v. FEC*, 540 U.S. 93, (2003), overruled in part on other grounds, *Citizens United v. FEC*, 558 U.S. 310 (2010) (holding that plaintiffs lacked standing because their interest was premised on a mistaken interpretation of legal precedent that did not apply; the group's "claim of injury . . . [was], therefore, not to a legally cognizable right"); *Arjay Assocs., Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) ("We hold that appellants lack standing because the injury they assert is to a nonexistent right."). *Compare Lujan*, 504 U.S. at 578 (explaining that some *de facto* injuries that are inadequate in law may be legislatively elevated to cognizable injuries that are sufficient to support standing).

of products lacked standing to sue for damages); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038 (9th Cir. 2006) (non-participant in benefit plan lacked standing to seek statutory damages under ERISA).

While the Court is not examining Plaintiffs' adequacy as class representatives, and does not rely on it as a basis for this order, it should be remembered that under either federal or state law, a named plaintiff must be a member of the class she purports to represent. Representatives who are not members of the class lack standing to bring class claims. *E. Tex. Motor Freight Sys, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (class representative must be a part of the class, possess the same interest, and suffer the same injury as class members); *First Am. Title Ins. Co. v. Superior Court*, 146 Cal. App. 4th 1564, 1573 (2007). Ordinarily, this is examined in terms of a class representative's adequacy under Fed. R. Civ. P. 23. But the reason for Rule 23's requirement is to satisfy standing requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011). *See also Kremens v. Bartley*, 431 U.S. 119, 131 n.12 (1977) (reasoning that, allowing a class action to be litigated by named plaintiffs without live claims would do away with Article III standing requirements).

**Factual Background**

The claims in this case arise from the purchase of hair products. The amended complaint alleges:

> when consumers respond to one of Defendants' "riskfree" trial offers, Defendants require the consumer to provide his or her credit card or debit card billing information, purportedly to pay nominal shipping and handling fees (typically less than $5.00) to receive the advertised product. However, 30 days after the consumer receives the product, Defendants charge the consumer the full price of the "trial" product, imposing charges that often amount to $159.90 or more onto the consumer's credit or debit card. Moreover, when a consumer accepts a "risk-free" trial offer, Defendants enroll the consumer in a negative option "auto shipment" plan, in which Defendants periodically ship additional products and charge the consumer's credit or debit card the

> full cost of the products, often $79.95 per month or more. To make matters worse, after consumers discover credit or debit card charges they did not authorize, and/or when consumers receive shipments they did not request, Defendants resist consumers' requests to return product for a refund and/or cancel further shipments.

(Am. Compl., ¶ 2.) The putative class consists of:

> All individuals in California who, within the statute of limitations period, were either (i) charged the full price for a Defendants' Product that was represented as a "free" trial, a "risk-free" trial, or at a discounted price, and for which Defendants charged a higher price if the product was not returned within a limited period of time, and/or (ii) enrolled in Defendants' auto shipment program.

(*Id.*, ¶ 33.) None of the briefing identifies, even approximately, the number of class members or the amount they spent; the notice of removal merely says that over 100 California residents purchased Defendants' products during this time period, and that the sales of products as part of an automatic renewal program "well exceeds" $5 million. (Notice of Removal, ¶¶ 16, 23.)

The complaint identifies four California statutes as the basis for Plaintiffs' claims: the Automatic Renewal Law, Cal. Bus. & Prof. Code §§17600, *et seq.*; the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*; the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*

The claims do not allege any defect in the products, or that the products did not live up to their claims. Instead, the claims depend solely on the price charged for the products, and customers' enrollment in the auto shipment program. Nor do the claims arise from any other behavior by Defendants, such as fraudulently

///
///
///
///

inducing customers to hand over credit card information that was then misused, or causing irritation and inconvenience.[3]

There are two important standing problems. First, except possibly for the nominal shipping fees (which were disclosed), the named Plaintiffs have not lost any money or property. A declaration by Plaintiffs' counsel suggested that Doucet's charges (except for the shipping fees) were refunded, and that Dukich's credit card was never charged.[4] If neither of them suffered any cognizable harm, they have no standing to seek any relief either on their own behalf or on behalf of a class.

Second, Plaintiffs on behalf of the people of California are seeking equitable relief that it does not appear would provide any redress to either Doucet or Dukich.

Additionally, because the two named Plaintiffs they were never charged for products, they are not members of the class they purport to represent. The Court does not rely on this here, partly because the issue was not briefed, and partly because it concerns only Plaintiffs' standing to represent the class, not standing to bring their own claims.

/ / /
/ / /
/ / /

---

[3] Two of the statutes Plaintiffs are suing under would not support such claims. *See Warner v. Tinder, Inc.* 105 F. Supp. 3d 1083, 1093–94 (C.D. Cal., 2015) (citing cases for the proposition that standing to sue under California's False Advertising Law and Unfair Competition Law is limited to plaintiffs who have had money or property taken from them). And in any event, the complaint does not allege any basis for compensatory damages for either Plaintiff.

[4] The briefing is ambiguous about whether Dukich was ever charged the shipping fee. Because both parties are obligated to show jurisdiction, and neither one has clearly said Dukich was charged for shipping, the Court will assume she was never charged. But even if she were charged for shipping, the analysis would be the same for her as for Doucet.

**Discussion**

    **Defendants' Position**

Defendants' response argues that while Plaintiffs[5] lack "statutory standing," they nevertheless have Article III standing. Statutory standing, as Defendants use the term, refers to class members' being among the parties protected by California's Unfair Competition Law under which they seek redress. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017). The response suggests, however, that Plaintiffs have Article III standing, because they were injured in other ways, and because they are asking for restitution. This is unpersuasive, however.

Defendants argue that Doucet's payment of initial shipping charges amounts to an injury-in-fact, while at the same time arguing that shipping charges are not part of Plaintiffs' claims. The class claims are not based on the initial, disclosed shipping charges. Rather, the class consists of people who were allegedly overcharged for products and/or who were enrolled in an auto shipment program. (Am. Compl., ¶ 33.) The complaint repeatedly alleges that shipping fees are disclosed, and that consumers knew about them and agreed to them before ordering. (*Id.*, ¶¶ 2, 17, 19, 21, 25, 27, 29.)

If Defendants had then done what Plaintiffs claim they promised to do, Plaintiffs would have no claim either for shipping charges or for anything else. Instead, Plaintiffs allege that Defendants delivered a different deal, one they had not agreed to. Specifically, they allege that Defendants then enrolled customers in automatic renewal programs they had not been told about or consented to, charged their credit and debit cards for the products sent as a result of those programs, and did not tell customers how to cancel the automatic renewal. (*Id.*,

---

[5] Defendants' brief argues that either the named Plaintiffs or the putative class members may satisfy standing requirements, and treats them interchangeably.

¶49.) Plaintiffs argue that under California law the products they were sent should be considered gifts, and that they should have no obligation to pay for them. (*Id.*, ¶ 48.) Plaintiffs bring claims under several different statutes, but under all theories, the underlying injury consists of being charged for products customers did not agree to buy. Other than this, the complaint does not identify any basis for either restitution or a damages award.

Defendants point out that Plaintiffs' request for restitution of all amounts they paid which, Defendants speculate, might include shipping fees. Because Plaintiffs' response addresses what they meant to say, this will be discussed in detail in connection with their response. But as noted *infra*, the fact that Doucet was charged a shipping fee does not give rise to jurisdiction.

In addition, what Defendants label "statutory standing" is California's "economic injury" requirement. Under California law, only plaintiffs who have suffered economic injuries can bring claims under the Unfair Competition Law. *Id.* (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011)).[6] Even assuming there a meaningful distinction between Article III standing and "statutory standing" could be made in another case, there is no difference here, because the only injuries Plaintiffs have identified are economic. If Plaintiffs did not suffer any economic harm, there is no basis for Article III standing either. *See Van Patten*, 847 F.3d at 1049 (affirming trial court's dismissal of Unfair Competition Law claims on the basis of lack of economic injury). The fact that other people may have suffered economic harm or might suffer economic harm in the future cannot give

---

[6] The parties' briefing treats standing requirements as the same for claims brought under all four statutes Plaintiffs' claims are based on. Any argument that standing requirements are different for Plaintiffs' different claims, or that standing is easier to establish under one of the other statutes, is waived. For purposes of this order, the Court will treat all four statutes' standing requirements as the same.

either Doucet or Dukich standing under Article III. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (discussing requirement that injury-in-fact must be particularized, *i.e.*, that it affect the plaintiff in a person and individual way).

Defendants, citing *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 554 (2014), suggest that they have no burden to establish the propriety of removal. In fact, *Dart Cherokee*'s holding is not as broad as Defendants argue. *Dart Cherokee*, which focused on the amount in controversy in diversity cases, made clear "no antiremoval presumption invokes cases invoking CAFA," but went on to say that a defendant must establish jurisdiction whenever the plaintiff contested it or the court questioned it. *Id. See Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (holding that a defendant bears the burden of alleging that CAFA jurisdiction exists, and if jurisdiction is challenged, bears the burden of demonstrating that removal jurisdiction is proper); *In re Anthem, Inc.*, 129 F. Supp.3d 887, 892–93 (N.D. Cal., 2015) (citing *Dart Cherokee*, 135 S.Ct. 547 at 554) ("There is no presumption against removal jurisdiction in CAFA cases . . . . The defendant, however, still bears the burden of establishing removal jurisdiction.")

In short, Defendants' response fails to meet their burden of establishing removal jurisdiction.

**Plaintiffs' Response**

Plaintiffs agree that the purchase price was fully refunded, but argue that merely buying products is enough to establish standing to pursue an Unfair Competition Law claim. Their brief did not separately address standing as to their other claims, but merely argued that because they had standing to bring that claim, *a fortiori* they had standing to bring their other claims. Their brief treats "statutory standing" as sufficient to establish Article III standing.

In support of this, they cite *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9thCir. 2013), *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); and

*Polo*, 833 F.3d at 1198. They also cite California state cases, but those do not concern standing in federal court. *Hinojos* and *Reid*, however address cases where the plaintiffs paid money for products, and could point to that as an economic injury. Neither Dukich nor Doucet, in the end, paid anything for any products. And *Polo* does not help Plaintiffs; there, the Ninth Circuit held only that the plaintiff, whose purchase price had been fully refunded, <u>might</u> still have standing under state law. Where a plaintiff has actually received all of the relief he or she could receive on the claim through further litigation, the court lacks jurisdiction over that claim.[7] *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144–45 (9th Cir. 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016)) ("[A] lawsuit—or an individual claim—becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation.") This includes claims for which a plaintiff has received a full refund. *Luman v. Theisman*, 647 Fed. Appx. at 806–07 (citing *Davis v. Fed'l Election Comm'n*, 554 U.S. 724,

---

[7] *Chen* addresses mootness, rather than standing, but the two doctrines are closely related. For purposes of this case, the difference between mootness and lack of standing turns only on when the plaintiff obtains all the relief she could obtain in the lawsuit. Standing is measured as of the commencement of the suit, while mootness can arise during the suit. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001), *as amended* (Aug. 15, 2001); *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). For example, if full payment is offered *and accepted* during the pendency of the suit, the claim becomes moot. *See Chen*, 819 F.3d at 1144. Assuming Doucet was given a refund before this action was filed, standing rather than mootness it he appropriate inquiry. *See Luman v. Theismann*, 647 Fed. Appx. 804, 806–07 (9th Cir. 2016) (where plaintiff had received a full refund before filing suit, claim should have been dismissed for lack of standing, rather than as moot). But both are jurisdictional, and either mootness or a lack of standing would require dismissal or remand of the moot claim. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013); *Luman* at 806 (affirming dismissal for lack of jurisdiction, even though district court erroneously did so on the basis of mootness rather than lack of standing).

732–33 (2008)) (holding that because the plaintiff had received a monetary refund, he no longer met the injury-in-fact requirement at the time he filed his complaint). *See also Berry v. Webloyalty.com, Inc.*, 517 Fed. Appx. 581, 581 (9th Cir. 2013) (holding that because the plaintiff had been fully compensated for charges against his debit card, he lacked Article III standing).

As to her claim for reimbursement, Dukich was never charged, and lacks standing to pursue that claim. Charges to Doucet's card for the products were fully refunded, and she too therefore lacks standing to seek reimbursement of those charges.

The only charge that was not refunded was $3.95 to Doucet's card for shipping charges. On this basis, Plaintiffs argue they have standing to bring their own claims as well as to represent the class. They point out that the amended complaint seeks refunds of "all monies" they and the putative class paid to Defendants. But, as noted, merely asking for relief does not confer standing. Furthermore, although the Court normally defers to a Plaintiff regarding the meaning of her complaint, reading it in the way Doucet urges is unreasonable, because a plaintiffs is only entitled to reimbursement of money she lost, not all money she spent.

Plaintiffs agree they intentionally ordered the samples, knowing they would have to pay the shipping fees, and that they received the samples they expected to. Had Defendants stopped there, it is uncontested Plaintiffs would not have been injured and would have no claim. Instead, Plaintiffs argue that Defendants went on to do other things that they had not consented to, namely, signed them up for an auto ship program, sent them products they had not ordered, and attempted to charge them for those products. Plaintiffs' supposed injury arises from those later actions. But Plaintiffs did not lose money or property as a result of those additional actions, and have not identified any other injury. From a financial or material perspective, which is what counts here, they got the benefit of their bargain. As

such, they are in the same position as a customer would be who had ordered and received samples as promised but was not signed up for an auto shipment program or sent unsolicited products. Such a customer would have suffered no cognizable injury, and would lack standing.

Plaintiffs cite *Kwikset*, *Hinojos*, *Reid*, and *Polo* as holding that buying a product one would not have bought or would not have paid as much for, but for a seller's misconduct, is an actionable injury. But those cases are of no help to them, for several reasons. First, those cases deal with customers who bought and paid for products, not customers who were sent products they did not have to pay for. Second, the customers suffered damage as the result of allegedly unlawful methods, acts, or practices. *See* Cal. Civ. Code §1780(a) (authorizing an action by any consumer who suffers damage "as a result of" the use of an unlawful method, act, or practice). Here, the only damage Doucet points to — being charged a shipping fee — was not suffered as the result of any allegedly unlawful method, act, or practice. A number of decisions by California courts explain why these facts, which were present in *Kwikset*, *Hinojos*, *Reid*, and *Polo* but which are absent here, are crucial.

*Warner* discusses an analogous situation, and explains why not every customer has standing to sue under these statutes, even if they spent money. In that case, Tinder allegedly promised a free dating phone app, but then delivered an app that was less than promised, and would only provide the promised features if users paid for them. Later, after the plaintiff had agreed to pay $2.99 per month for additional features, Tinder allegedly offered him an upgrade to a premium service for $19.99 per month, which he accepted. The court held that the plaintiff lacked standing to make a claim for Tinder's failure to provide a free app, because he had not lost any money or property. And even assuming Tinder's undisclosed intention to raise its price unilaterally was fraudulent and led the plaintiff to agree

///

13

17cv823-LAB (KSC)

to pay $2.99 per month when he otherwise would not have, he did not suffer a cognizable injury.

*Hall v. Time*, 158 Cal. App. 4th 847 (Cal. App. 4 Dist. 2008), on which *Warner* relies, is even more closely analogous. In that case, the defendant allegedly lured in customers to purchase books by offering a free preview period, which it had no intention of honoring. After customers received the books, the defendant allegedly then sent them an invoice demanding payment. The plaintiff in that case paid for the book. But he did not allege he did not want the book, that the book was unsatisfactory, or that it was worth less than he paid. *Id.* at 855. In other words, he wanted the book that he ordered and paid for. The court held that he had not suffered an injury in fact, and lacked standing. *Id.* Although the plaintiff had "expended" money, he had not "lost" money. *Id.* at 855. Doucet's situation is the same: She wanted the sample product that she ordered, and for which she paid the shipping fee, and she received it.

Plaintiffs also that that being misled into doing business with Defendants amounts to an injury. They represent that they would never have done business with Defendants and handed over their credit card information to them had they known what Defendants' practices were. While paying the shipping fee made Doucet Defendants' customer, merely being a paying customer or doing business with a company that makes misrepresentations does not confer standing.

In *Medina v. Safe-Guard Prods.*, 164 Cal. App. 4th 105 (Cal. App. 4 Dist. 2008), the plaintiff bought insurance coverage from a company not licensed to sell insurance in California. The contract was fully enforceable and the plaintiff had not suffered any uncovered losses, but argued he had standing because he had spent money on the coverage. *Id.* at 114. The court rejected that argument, and determined that he lacked standing. The insurance company's unlicensed status did not cause him any monetary loss. *Id.* at 115 ("He hasn't suffered any loss *because* of Safe-Guard's unlicensed status.") And because the company's

unlicensed status did not cause him to pay for his coverage and therefore did not cause his injury, it did not satisfy the requirement. *Id.* ("Here, this is no allegation that . . . Safe-Guard's unlicensed status *caused* him to part with the money he paid for the [coverage].")

Doucet's argument suffers from the same flaw as the plaintiff's in *Medina*. Although she paid for shipping, Defendants' alleged misrepresentations did not cause her to do so, nor did they cause her to lose money. Although *Medina* frames its analysis in terms of injury, causation, and reliance requirements, it makes clear that these are required for standing; if they are not satisfied, a plaintiff lacks standing. *Id.* at 108 n.2.

Plaintiffs are also seeking injunctive relief in the form of an order intended to prevent Defendants from taking advantage of other California consumers. (*See* Am. Compl., ¶ 51.) Plaintiffs do not intend to order anything else from Defendants, and they implicitly concede that the injunction would only be of use to other people; it would not provide them with any relief or benefit them in any way. Plaintiffs' response concedes that decisional law is divided about whether a plaintiff seeking an injunction under these circumstances has standing in federal court, and whether federal courts have jurisdiction. They cite several unpublished district court decisions from this circuit that have found jurisdiction. The case they chiefly rely on, *Chester v. TJX Cos.*, 2016 WL 4414768 (C.D. Cal., Aug. 18, 2016), relied on several other district court decisions,[8] as well as California court decisions regarding the importance of injunctive relief. That case dealt with a situation where plaintiffs sought to enjoin false advertising that there was no likelihood they would

---

[8] These included *Koehler v. Litehouse, INc.*, 2012 WL 6217635 at *6 (N.D. Cal., Dec. 13, 2012) and *Lanovaz v. Twinings N. Am., Inc.* 2014 Wl 46822 at *10 (N.D. Cal., Jan. 6, 2014). Plaintiffs also cite *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, *9–12 (N.D. Cal., June 14, 2012).

15

be deceived by (or otherwise injured by) in the future. The court found, principally on the basis of public policy arguments, that the plaintiffs had standing. If plaintiffs lacked standing, the court reasoned, California's consumer protection laws would be "eviscerated" and no court could hear federal claims. *Id.* at *8. Plaintiffs acknowledge that this Court and other courts have disagreed. *See In re 5-hour ENERGY Marketing & Sales Practices Litig.*, 2014 WL 5311272, *10–11 (C.D. Cal., Sept. 4, 2014) (describing the three principal lines of cases on this issue).

With respect to the other courts involved, the Court is convinced that that analysis is wrong, and in fact that *Lujan* and other binding precedent forbids the Court from following it. The Constitution, including Article III, is the supreme law of the land, and California's own laws and public policies cannot override it.

First, California courts are not bound by Article III's limitations on federal courts, and are fully able to entertain those claims. *See Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, *5 (S.D. Cal., May 13, 2013) ("[P]laintiffs who have no intention of again purchasing a product that is the focus of false advertising claims are not precluded from seeking an injunctive remedy because they can sue in state court.")

Moreover, some plaintiffs can still have standing, even if these Plaintiffs do not. For example, a plaintiff with representational standing might bring those claims on behalf of its members. *See, e.g., Nat'l Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories*, 850 F.2d 904 (2d Cir. 1988) (trade association has standing to seek an injunction against false advertising on behalf of its members). The state attorney general can sue enforce the law. *See, e.g., People v. Custom Craft Carpets, Inc.*, 159 Cal. App. 3d 676 (Cal. App. 2 Dist. 1984). And some plaintiffs can show a reasonable likelihood of harm unless unfair competition or false advertising are enjoined. Common examples are competitors who are put at an unfair disadvantage, *see, e.g., Animal Legal Def. Fund v. HVFG LLC,* 939 F. Supp. 2d 992, 998–99 (N.D. Cal. 2013) (plaintiffs had standing to seek an injunction

forbidding their competitor from misleadingly labelling its competing product), or customers who plan to buy the products anyway, and seek truthful information about them. *See, e.g., Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (plaintiffs who intended to buy defendants' beverages in the future had standing to seek an injunction requiring that the containers be properly labeled).

But even if it were true that fidelity to binding precedent meant nobody would have standing, the Supreme Court has specifically rejected that as a reason to find standing:

> The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing. This view would convert standing into a requirement that must be observed only when satisfied.

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982) (internal citations and quotations omitted). *See also 5-hour ENERGY*, 2014 WL 5311272 at *11 ("The federal courts are not empowered to set aside the standing requirements of Article III in the name of public policy, even when that policy is laudable.")

Because Plaintiffs concededly will not be injured in the future by the actions they ask the Court to enjoin, and because an injunction would provide them with no redress, they lack standing. *See id.*

Although Plaintiffs requested other kinds of relief, such as declaratory relief, they did not address those in their response, and in any event the analysis appears to be the same.

**Conclusion and Order**

The Court finds that Plaintiffs lack standing, and that it therefore lacks subject matter jurisdiction over this case. Plaintiffs have requested that should the Court find they lack standing, they be allowed to pursue their claims in state court. Unless

17
17cv823-LAB (KSC)

it is completely clear the state court would also dismiss the claims, remand rather than dismissal is appropriate. *Polo*, 833 F.3d at 1198.

This action in its entirety is therefore **REMANDED** to the Superior Court of California for the County of San Diego.

**IT IS SO ORDERED**.

Dated: November 17, 2017

_____
Hon. Larry Alan Burns
United States District Judge